IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LEGACY PLUS JOINT VENTURE, a Nebraska Joint Venture, HARTMAN CATTLE COMPANY, INC., a Nebraska Corporation, BARRY HALL, an Individual, d/b/a HALL'S CATTLE COMPANY, a Canadian Entity, LEE'S CATTLE COMPANY, an Arizona Corporation, and TIM WEBER, an Individual, d/b/a WEBER CATTLE CO., a Nebraska Entity,<br><br>          Plaintiffs,<br><br>v.<br><br>GLOVER CATTLE COMPANY, an Oklahoma Partnership, and RONNIE GLOVER, an Individual,<br><br>          Defendants. | 4:07CV3193<br><br>**MEMORANDUM AND ORDER** |

Among other things, the defendants Glover Cattle Company and Ronnie Glover[1] move to dismiss (filing 3) under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. I will grant the motion and dismiss this case without prejudice for lack of personal jurisdiction.

## I. BACKGROUND

The plaintiffs claim that the defendants hid and then disposed of a bull that was jointly owned, and by doing so, the defendants breached a joint-venture agreement,

---

[1] Tyler Glover and Bryan Begley have previously been dismissed. (Filing 12.)

engaged in deceptive business practices under Nebraska law, fraudulently concealed and misrepresented facts, interfered with a business relationship or expectancy, and committed the tort of conversion. Essentially, it is claimed that one of the defendants told one of the plaintiffs that the bull had died when, in fact, the animal was alive. After that, it is claimed that the defendants wrongly used the bull and sold or conveyed interests in it to others.

The following facts are either (1) supported by affidavits that are not contradicted by counter-affidavits or (2) are not disputed, to wit:

>The plaintiffs are from Nebraska, Canada, and Arizona. (Filing 1, Complaint, at CM/ECF pp. 1-2 ¶¶ 1-7.) The defendants are from Oklahoma. (*Id.* at CM/ECF p. 2 ¶¶ 8-9.) According to the complaint, other "[r]elevant [n]on-parties" are from Oklahoma, Wyoming, and Illinois. (*Id.* at CM/ECF pp. 2-3 ¶¶ 14-23.) In 1999, some of the plaintiffs, some of the defendants, and other parties reached an agreement to share ownership of a bull. (*Id.* at CM/ECF pp. 4-5 ¶ 32; Filing 14, Hartman Aff., at CM/ECF p. 13 ¶ 7; Filing 4-2, Ronnie Glover Aff., at CM/ECF p. 2 ¶ 3.) That agreement was reached in principle in Denver, Colorado, during the National Western Stock Show. (*Id.*) Before that agreement in principle was reached, the bull had been in Nebraska, but it had been transported to the stock show so it could be exhibited. (Filing 14, Hartman Aff., at CM/ECF pp. 12-13 ¶¶ 4-6.) The agreement to share ownership of the bull was contingent upon the animal undergoing genetic testing. (*Id.* at CM/ECF p. 13 ¶ 9.) That testing was conducted in Nebraska. (*Id.* at CM/ECF p. 13 ¶ 10.) The test was a success. (*Id.* at CM/ECF p. 13 ¶ 11.) One of the Nebraska plaintiffs called one of the Oklahoma defendants to give the defendant the good news. (*Id.*) One of the Oklahoma defendants then sent that defendant's portion of the required payment to Nebraska by a wire transfer from an Oklahoma bank. (*Id.* at CM/ECF p. 14 ¶ 12; Filing 4-2, Glover Aff., at CM/ECF p. 2 ¶ 3.) Between 1999 and 2001, the bull was again exhibited at the Denver stock show; it was taken to Ankeny, Iowa, for semen collection; and it was kept in Nebraska and later in Oklahoma. (Filing 14, Hartman Aff., at CM/ECF p. 14 ¶¶ 13-

17; Filing 4-2, Ronnie Glover Aff., at CM/ECF p. 2 ¶¶ 3-4.) While the animal was in Oklahoma, and in December of 2001, one of the Nebraska plaintiffs called one of the defendants, and a discussion took place about the health of the bull. (Filing 4-2, Ronnie Glover Aff., at CM/ECF p. 2 ¶ 4.) What occurred during and after that phone conversation forms the basis for the plaintiffs' suit.

There are no other facts pertinent to the issue of personal jurisdiction. Aside from the foregoing, there is no evidence that the Oklahoma defendants have ever conducted any business in Nebraska or with Nebraska residents or otherwise engaged in any activity with Nebraska or Nebraska residents. (*Compare* Filing 4-2 (Ronnie Glover Aff.) *with* Filing 14 (Hartman Aff.).)

## *II. ANALYSIS*

When, as here, the defendants challenge the assertion of personal jurisdiction and buttress their challenge with affidavits, the plaintiffs must establish a prima facie case that the court has jurisdiction over the defendants. *See*, *e.g.*, *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072-1073 (8th Cir. 2004) (once jurisdiction has been controverted or denied, the plaintiff has the burden of proving such facts; on a motion to dismiss for lack of personal jurisdiction, the plaintiff's prima facie showing that the defendants can be subjected to jurisdiction within the state must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motion and in opposition thereto) (tort case). Giving them the benefit of any reasonable doubt, the plaintiffs have failed to make out a prima facie case for personal jurisdiction.

The evidence shows only that:

1. An interest in a bull, which previously had been located in

>   Nebraska, was sold in Denver, Colorado, during a stock show to folks in Oklahoma.
>
> 2. As a contract condition, the bull was to be tested.
>
> 3. Prior to any breach or tort, the bull was tested in Nebraska.
>
> 4. After the agreement was reached, and prior to any breach or tort, the bull was kept in Nebraska and Oklahoma and taken various other places in the country.
>
> 5. Prior to any breach or tort, the folks in Oklahoma sent one payment to Nebraska to pay for their interest in the bull.
>
> 6. A Nebraska plaintiff twice telephoned an Oklahoma defendant while the Nebraskan was in Nebraska and the Oklahoman was in Oklahoma.
>
> 7. The alleged breach of contract or torts arose after the animal was in Oklahoma.

The foregoing is insufficient to hail the Oklahoma defendants into court in Nebraska. Here, the nature, quality, and quantity of contacts with Nebraska are few, fleeting, and minor. Furthermore, the relationship of the causes of action to Nebraska is highly attenuated because, among other things, the bull was in Oklahoma when the events that give rise to this suit began to unfold. Still further, there is nothing about this case that elevates Nebraska's interest over Oklahoma's interest. Finally, given that the parties, and the relevant non-parties, are located all over this country and in Canada, Nebraska is no more convenient a place to litigate than is Oklahoma.

In summary, the requisite minimum contacts with Nebraska have not been shown and it would offend notions of fair play and substantial justice to require the

defendants to come here to defend themselves. *See*, *e.g.*, *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006) (Lanham Act and Minnesota Deceptive Trade Practices Act case; "'Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause.'") (quoting *Porter v. Berall*, 293 F.3d 1073, 1075 (8th Cir. 2002) (malpractice case)); *J.N.F.S. Engineering Co. v. Gibson Technical Servs., Inc.*, No. 4:06CV3245, 2007 WL 28413, at *4 (D. Neb. Jan. 3, 2007) (contract case; five checks mailed to Nebraska corporation in Nebraska insufficient to confer personal jurisdiction). Accordingly,

IT IS ORDERED:

1. The motion to dismiss (filing 3) is granted for lack of personal jurisdiction and is otherwise denied as moot.

2. Judgment will be entered by separate document dismissing this case without prejudice.

DATED this 3rd day of March, 2008.

BY THE COURT:

s/ *Richard G. Kopf*
United States District Judge

-5-